UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JOHNNY DANIEL REYES et al.,

               Plaintiffs,

    -v-                                     No. 15CV2882-LTS-DCF

NY F&B SERVICES LLC et al.,

               Defendants.
------------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

          Plaintiffs Johnny Daniel Reyes ("Reyes"), Efrain Gonzalez Serveriano

("Serveriano"), and Neil Sanchez ("Sanchez" and, collectively, "Plaintiffs") bring this putative

collective and class action, on behalf and themselves and similarly situated non-exempt

employees employed by Defendants within the last six years (the "Covered Employees"), against

Defendants NY F&B Services LLC ("F&B"), Ertunc Gundogdu ("Gundogdu") and Yusuf Sezer

("Sezer" and, collectively, "Defendants"), seeking unpaid wages under the Fair Labor Standards

Act (29 U.S.C. §§ 201 et seq., ("FLSA")) and New York Labor Law ("NYLL").  (See Complaint

("Compl."), Docket Entry No. 1.)  The Court has jurisdiction of this matter pursuant to 28 U.S.C.

§ 1331.

          Plaintiffs now seek: (1) conditional certification of their FLSA claims as a

representative collective action pursuant to 29 U.S.C. § 216(b); (2) court-facilitated notice of the

FLSA action to Covered Employees, including a consent form as authorized by the FLSA; (3)

approval of a proposed FLSA notice and consent form; (4) production of the names, titles,

compensation rates, hours worked, periods of employment, Social Security numbers and contact

information of all Covered Employees within 10 days of Court approval of conditional

certification; (5) posting of the notice of this litigation, along with consent forms, in a

conspicuous location by Plaintiffs' counsel during regular business hours at the 7 Green

restaurant; and (6) equitable tolling of the FLSA statute of limitations until such time as Plaintiffs

are able to send notice to potential opt-in plaintiffs .  (See Docket Entry Nos. 20, 21.)

      The Court has carefully considered the parties' submissions.  For the reasons set

forth below, Plaintiffs' motion is granted in part.


BACKGROUND[1]

      Defendants Gundogdu and Sezer are the owners and principals of the corporate

defendant F&B, which operates two Mediterranean restaurants in New York City, 7 Green &

Grain ("7 Green") and Dardanel.  (See Compl. ¶¶ 7-9.)  Plaintiffs Reyes, Serveriano and Sanchez

each worked for 7 Green as deliverymen.  (See id. ¶¶ 24-26.)  Reyes alleges that he worked at 7

Green from in or around June 2013 though February 2, 2015, excluding the period from March

2014 through December 2014.  (Id. ¶ 24.)  Serveriano alleges that he worked at Dardanel from in

or around January 2013 through April 2013, at which time Dardanel closed and he was

transferred to 7 Green.  (Id. ¶ 25.)[2]  Sanchez alleges that he worked at 7 Green from in or around

---

[1]     The facts set forth herein are drawn from the Complaint in this action.  (See generally
Compl.)  The allegations found in the Complaint are also reflected in the respective
declarations of each named plaintiff.  (See Docket Entry Nos. 22 ("Reyes Decl."), 23
("Sanchez Decl.") and 24 ("Serveriano Decl.").)

[2]     It is unclear whether Serveriano is still employed by Defendants.  The Complaint,
which was filed on April 14, 2015, states that "Plaintiff SERVERIANO is currently
still employed by Defendants." (Compl. ¶ 25.)  However, in his declaration,
Serveriano indicates that he "left Defendants employ on or around April 9, 2015."
(Serveriano Decl. ¶ 1.)

June 2012 through in or around December 2013.  (Compl. ¶ 26.)  Sanchez claims to have worked

as both a food preparer and a deliveryman, making him the only named plaintiff employed in any

capacity other than as a deliveryman.  (See id. ¶ 26.)

        Plaintiffs claim that Defendants: failed to pay the minimum wage required by law;

failed to pay either the FLSA overtime rate of time and one-half despite Plaintiffs consistently

working over 40 hours a week; failed to pay Plaintiffs for all hours worked due to their policy of

time-shaving; and illegally retained gratuities while improperly taking a tip credit.  (See Compl.

¶¶ 1, 14, 27-30, 44-46.)  Plaintiffs purport to bring their FLSA claims – with the exception of

those rooted in Defendants' tipping policies – on behalf of all non-exempt employees of

Defendants, a grouping that includes delivery persons, food preparers, cooks, line cooks, cashiers

and dishwashers.  (Id. ¶¶ 13.)

        With respect to the claims stemming from Defendants' tipping policies, Plaintiffs

assert that "a subclass of FLSA Collective Plaintiffs who were tipped employees comprised of

delivery persons and cashiers (the "Tipped Sublcass"), also suffered from Defendants' failure and

refusal to pay them the proper minimum wage.  (Compl. ¶ 14.)  Plaintiffs assert that Defendants

failed to satisfy all statutory requirements for taking tip credits under the FLSA, and thus were

not entitled to take any such credits.  (Id.)  Specifically, Plaintiffs claim that Defendants: failed to

provide proper notice to all tipped employees that they were taking a tip credit; failed to provide

proper wage statements informing tipped employees of the amount of tip credit taken for each

payment period; caused tipped employees to engage in non-tipped duties exceeding 20 percent of

each workday; and failed to maintain daily records of tips earned by tipped employees.  (Id. ¶¶

29, 32-33, 36, 38.)  Plaintiffs further assert that Tipped Subclass members were required to follow

the tip payment structure instituted by Defendants, which was not agreed upon by tipped

employees, and that members of the Tipped Subclass received only $10 worth of tips for each catering event they worked, with Defendants illegally retaining the balance of those tips.  (Compl. ¶¶ 34-35.)  This policy, Plaintiffs claim, led to Defendants paying the Tipped Subclass a wage below the applicable federal and state minimum wages.  (Id. ¶ 37.)

Plaintiffs filed their Complaint on April 14, 2015, and filed the instant motion seeking certification of an FLSA collective action on August 18, 2015.  (See Docket Entry Nos. 1, 20.)

DISCUSSION

Plaintiffs' Motion for Conditional Certification

The FLSA was enacted to help "eliminate low wages and long hours" for workers, and to free businesses "from the interferences arising from production of goods under conditions that were detrimental to the health and well being of workers."  See McGuiggan v. CPC International, Inc., 84 F. Supp. 2d 470, 478 (S.D.N.Y. 2000) (citing 29 U.S.C. §§ 203(e), (g)).  The statute accomplishes this goal by regulating minimum and overtime wages paid by employers engaged in interstate commerce.  See generally 29 U.S.C. §§ 201 et seq.

Section 216(b) of the FLSA permits a plaintiff to file suit on "behalf of himself . . . and other employees similarly situated" when such similarly situated employees "consent in writing" by opting-in to the suit and filing their consent with the court.  See 29 U.S.C.S. § 216(b) (LexisNexis 2010).  The FLSA thereby permits the maintenance of collective actions, which encourage the "efficient resolution in one proceeding of common issues of law and fact" and enable employees to "lower individual costs to vindicate rights by the pooling of resources."  See Hoffman-LaRoche Inc v. Sperling, 493 U.S. 165, 170 (1989).  "Courts generally determine the

appropriateness of class certification at two stages: first, on the initial motion for conditional class certification, and second, after discovery."  Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007); see also Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 336 (S.D.N.Y. 2010).  "At the first step, known as the notice phase, courts utilize a lenient evidentiary standard in assessing whether the Plaintiff has presented sufficient evidence to demonstrate that a prospective class of member plaintiffs is similarly situated to the named Plaintiff."  Anglada v. Linens n' Things, Inc., No. 06CV12901-CM-LMS, 2007 WL 1552511, at *4 (S.D.N.Y. Apr. 26, 2007) (Report & Recommendation adopted May 22, 2007); see also Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("It is well settled that courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the FLSA . . . The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'").  "In the first stage, the court will look at affidavits and pleadings and, if the plaintiff satisfies the 'minimal burden of showing that the similarly situated requirement is met,' the court certifies the class as a collective action."  Torres v. Gristede's Operating Corp., No. 04CV3316-PAC, 2006 WL 2819730, at *7 (S.D.N.Y. Sept. 29, 2006) (quoting Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)).  Indeed, at this stage, plaintiffs need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law," and demonstrate that there is a "factual nexus between [the named plaintiff's] situation and the situation of other current and former [employees]."  Hoffman, 982 F. Supp. at 261-62.  Courts in this district have held that "[c]onditional class certification is appropriate . . . where all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations."

Fasanelli, 516 F. Supp. 2d at 322.

However, "[w]hile Plaintiff's burden of proof is low, it is not non-existent – certification is not automatic." Romero v. H.B. Auto. Grp., Inc., No. 11CV386-CM, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) (internal quotation marks and citation omitted). The Second Circuit has indicated that, while this burden must remain low, it "cannot be satisfied simply by unsupported assertions." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010) (internal quotation marks and citation omitted). "Although the standard which governs plaintiff's application is lax, and their burden modest, a court must nonetheless take a measured approach when addressing a request for collective action certification, mindful of the potential burden associated with defending against an FLSA claim involving a broadly defined collective group of plaintiffs." Colozzi v. St. Joseph's Hospital Health Center, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009).

Plaintiffs argue that they have "made far more than a modest showing that they and Covered Employees are similarly situated." (See Docket Entry No. 21, Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification ("Pl. Memo") at p. 11.) Plaintiffs direct the Court to the Complaint and their respective declarations, arguing that the allegations contained therein show that "all Covered Employees were subject to the same compensation scheme," thereby establishing that they were victims of a common policy or plan that violated the FLSA. (See Pl. Memo at p. 11.) The facts proffered by the Plaintiffs, however, fail to meet their burden for certification of the broad class which they propose.

When a plaintiff fails to provide any detail beyond "unsupported assertions and conclusory allegations" in describing the employment conditions of classes of employees other than his own, the court may find that "[t]he factual record supporting [the certification motion]

. . . is insufficient to support even an inference that a common policy or plan that violated the law existed with respect to [other] variet[ies] of potential opt-in plaintiff[s]."  Sanchez v. JMP Ventures, L.L.C., No. 13CV7264-KBF, 2014 WL 465542, at *1-2 (S.D.N.Y. Jan. 27, 2014).  In Sanchez, the court denied the plaintiff's motion for conditional certification of a class composed of "all tipped employees, including delivery persons, bussers, runners, waiters and bartenders," where the plaintiff had "worked solely as a delivery person."  See id, 2014 WL 465542, at *1. Although the plaintiff had alleged that the policies to which he was subjected were a "common practice" of the defendant employer, his claimed basis of knowledge consisted only of "observations" and "conversations" with other employees, as to which he failed to provide any detail.  See id. at *2.  Finding such a proffer insufficient, the court held that "[c]onditional certification of the class proposed by plaintiffs . . . is not supported by plaintiff's declaration," and denied the certification motion.  Id.

Similarly, in She Jian Guo v. Tommy's Sushi, Inc., No. 14CV3964-PAE, 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014), the plaintiffs sought conditional certification of a broad class of employees "including but not limited to chefs, waiters, kitchen workers, dishwashers, and delivery persons or any other equivalent employee" who had worked at the defendant employer's restaurant.  She Jian Guo, 2014 WL 5314822, at *3.  The plaintiffs, however, had been employed only as deliverymen.  Id. at *1.  The court noted that "[a]s to individuals employed in positions other than deliveryman, plaintiffs [had] allege[d] only that their 'co-workers were also not paid at the minimum wage rage' . . . and that they [were] 'personally . . . aware of several kitchen workers who did not receive the minimum wages and overtime compensation required by law.'" Id. at *3.  The court concluded that such "vague, conclusory, and unsupported assertions [did] not suffice" to satisfy the standard for certification of such a broad class, where the plaintiffs'

submissions did "not contain any allegations, regarding, for example, the specific hours worked by, or the amounts paid to, other employees." She Jian Guo, 2014 WL 5314822, at *3.  The court therefore granted certification of a class composed only of deliverymen employed by the defendant restaurant during the relevant time period.  Id. at *4.

   Similar deficiencies are readily apparent in this case.  Here, Reyes and Serveriano concede in their respective declarations that they worked only as deliverymen for 7 Green and Dardanel.  (See Reyes Decl. ¶ 1; Serveriano Decl. ¶ 1.)  Only Sanchez purports to have worked in any other capacity.  (See Sanchez Decl. ¶ 1.)  However, Plaintiffs seek certification of a class that includes "delivery persons, food preparers, cooks, line-cooks, cashiers and dishwashers."  (See Compl. ¶ 13.)  With respect to the compensation schemes purportedly applied to classes of workers other than deliverymen, Plaintiffs have offered only conclusory assertions and vague allegations.  (See Reyes Decl. ¶¶ 4-5, 9-10; Serveriano Decl. ¶¶ 4-5, 8-9; Sanchez Decl. ¶¶ 4-5, 9-10.)  They claim nothing beyond ambiguous "personal observations [of] and conversations [with]" other types of employees as the basis of their knowledge that all of Defendants' employees were subject to a common unlawful scheme of compensation.  (See, e.g., Reyes Decl. ¶ 4; Severiano Decl. ¶ 4; Sanchez Decl. ¶ 4.)  This is patently insufficient to meet even the minimal burden of demonstrating the existence of an unlawful plan or policy affecting all of the employees within the proposed collective in a similar fashion.  Plaintiffs have failed to offer, for instance, any explanation as to the basis of their knowledge of other employees' compensation, and thus have not demonstrated that other classes of employees were "similarly situated" to themselves.[3]

---

[3]  Although Plaintiff Sanchez does assert that he was a food preparer in addition to being a deliveryman (Sanchez Decl. ¶ 1), he fails to offer anything beyond the same conclusory assertions and allegations offered by Reyes and Serveriano with respect to

Moreover, Defendants have made an uncontroverted factual proffer that deliverymen were subject to a unique tipping scheme.  (See Docket Entry No. 33, Declaration of Ertunc Gundogdu ("Gundogdu Decl.") ¶¶ 12-19, 26; see also Docket Entry No. 30, Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Certification ("Def. Memo") at p. 5.)  If, as Plaintiffs argue, this case is "fundamentally . . . a tip credit case" (see Docket Entry No. 34, Reply Memorandum of Law in Support of Plaintiffs' Motion for Conditional Collective Certification ("Reply Memo") at p. 1),[4] then it cannot be the case that Plaintiffs are similarly situated to other types of employees, if they were subject to a system of tipping unique to deliverymen alone.  The Court therefore declines to conditionally certify the broad collective of employees that Plaintiffs seek.

Plaintiffs have, however, met the minimal burden for certification of a collective of employees composed of deliverymen employed by Defendants.  The fact that the three named Plaintiffs – who all were deliverymen – have each offered a declaration indicating that they were subject to a common scheme of compensation constitutes an "adequate factual showing to support an inference that . . . [an unlawful] uniform policy or practice exist[ed]" with respect to deliverymen employed by Defendants.  See Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013).  Furthermore, the vast majority of employees about whose compensation Plaintiffs purport to have knowledge are deliverymen.  (See Reyes Decl. ¶ 4; Serveriano Decl. ¶ 4; Sanchez Decl. ¶ 4.)  Because all "putative class members are [or were deliverymen at] the same restaurant enterprise and allege the same types of FLSA violations," Fasanelli, 516 F. Supp.

---

the compensation of other classes of employees.  (See generally Sanchez Decl.)

[4]     Indeed, the majority of Plaintiff's arguments with respect to inadequate wages appear to be rooted in Defendants' purportedly invalid tip credit scheme. (See Pl. Memo at pp. 3-5.)

2d at 322, the Court will grant Plaintiffs' motion to the extent that it seeks conditional

certification of a collective composed of deliverymen who worked at the 7 Green and Dardanel[5]

restaurants within three years of the August 18, 2015, filing date of Plaintiffs' certification

motion.[6]

        The Court further grants Plaintiffs' motion to the extent that it seeks tolling of the

statute of limitations with respect to potential plaintiffs' FLSA claims as of the filing date of the

certification motion.  See Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 170 (S.D.N.Y. 2014) ("A

district court may toll the limitations period [in an FLSA case] to avoid inequitable

circumstances, giving due consideration to whether the plaintiffs have acted with reasonable

diligence in pursuing their claims and whether the circumstances are extraordinary enough to

warrant equitable relief . . . Absent tolling of the limitations period, a substantial number of class

members may now be time-barred through no fault of counsel or the class representative.");

---

[5]    The Court will certify a class including employees of Dardanel based on Plaintiff Serveriano's factual proffer and personal knowledge of the compensation scheme in place there.  (See generally Serveriano Decl.)  If, as Defendants argue, Dardanel was never operational (see Gundogdu Decl. ¶ 30; Def. Memo at p. 13), then they will not be prejudiced by this decision, as certification of a class including Dardanel employees will not bring additional plaintiffs into the case beyond those who worked at 7 Green.

[6]    Plaintiffs seek certification of a class of workers stretching back six years from the filing date of their motion, arguing that certification of such a class will increase judicial economy by including potential plaintiffs who may well have timely NYLL claims despite the fact that their FLSA claims may have expired. (See Reply Memo at pp. 8-9; see also McLean v. Garage Management Corp., No. 10CV3950-DLC, 2012 WL 1358739, at *7 (S.D.N.Y. Apr. 19, 2012) (holding that statute of limitations on FLSA claims is generally two years, or three years if the FLSA violation is found to be "willful.").)  Plaintiff has not yet moved for class certification pursuant to Federal Rule of Civil Procedure 23.  Judicial economy will not be served by certification of a collective of plaintiffs that includes individuals whose FLSA claims are time-barred at this juncture; such a course of action would merely invite motions to dismiss facially defective FLSA claims.  The Court therefore denies Plaintiffs' motion insofar as it seeks certification of a collective of employees who were employed by Defendants within six years of the filing date of the motion.

McGlone v. Contract Callers, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("courts have discretion to equitably toll the limitations period in appropriate cases in order to avoid inequitable circumstances . . . the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine.") (internal quotation marks and citations omitted).

CONCLUSION

Plaintiffs' motion for conditional collective certification is granted in part. The Court certifies a class of FLSA plaintiffs limited to individuals who were employed as deliverymen by Defendants at any time after August 18, 2012, which represents the three-year statute of limitations cutoff from the date of filing of the motion. The Court hereby directs Defendants to produce to Plaintiffs the full names and contact information – including last known addresses, phone numbers and email addresses – of all such individuals in Excel format within 14 days of the entry of this Memorandum Opinion and Order.[7] The statute of limitations for the FLSA claims of all potential plaintiffs is hereby tolled as of August 18, 2015, until the conclusion of the opt-in period that will be set by the Court.

The Court directs the parties to meet and confer to negotiate the content and format of an appropriate notice and consent form. The parties must jointly submit a proposed notice and consent form to the Court for approval no later than March 31, 2016. If the parties are

---

[7]       Plaintiffs may, at a later date, renew their application for production of the Social Security numbers of prospective class members upon a demonstration that such information is necessary for the purpose of performing a skip trace for returned notices.

unable to negotiate a joint proposal, each party must send its individual proposal to the Court accompanied by a statement detailing that party's objections to the opposing party's proposal and the legal basis of each objection.

This Memorandum Opinion and Order resolves Docket Entry Number 20.

SO ORDERED.

Dated: New York, New York
       February 22, 2016

    /s/  Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge